UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SPENCER NEAL, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO.: |
| Plaintiff, | ) ) | **CIVIL RIGHTS** |
| vs. | ) ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:** |
| SCIOTO DOWNS, INC., d/b/a ELDORADO GAMINGG SCIOTO DOWNS, | ) ) ) ) | **1ST CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of the Americans with Disability Act of 1990 ("Title III" and "ADA"), |
| & | ) ) | 42 U.S.C. §§ 12181 *et seq.* |
| COLUMBUS SOUTHEAST HOTEL GROUP LLC, d/b/a HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, | ) ) ) ) | **2ND CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of Ohio Revised Code 4112.02, *et seq.* |
| Defendants. | ) ) ) ) | **3RD CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of Ohio Administrative Code 4101:1-11, *et seq.* |

Plaintiff SPENCER NEAL, on behalf of himself and all other similarly situated persons with mobility disabilities, hereby Complains of Defendants SCIOTO DOWNS, INC. and COLUMBUS SOUTHEAST HOTEL GROUP LLC, and alleges as follows:

**INTRODUCTION:**

1.      This is a civil rights action for discrimination against persons with physical disabilities, of which plaintiff NEAL is a member of, for failure to remove architectural barriers structural in nature at Defendant's SCIOTO DOWNS, INC.'s racino facility and COLUMBUS SOUTHEAST HOTEL GROUP LLC's connecting hotel, places of public accommodation, thereby discriminatorily denying plaintiff access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof.

NEAL, on behalf of himself and all others similarly situated, seeks injunctive relief and damages pursuant to the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.;* Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code § 4101:1-11, *et sec.*

2. NEAL is a person with physical disabilities who, on or about November 16, 2019, November 17, 2019, January 30, 2020, January 31, 2020, and August 3, 2020 (racino only), was an invitee, guest, patron, or customer at ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, in the City of Columbus, Ohio. At said time and place, Defendants failed to provide proper legal access to ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, which are public accommodations and/or public facilities. The denial of access was in violation of both federal and Ohio legal requirements, and NEAL suffered violations of his civil rights to full and equal access and was embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3. **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under parallel Ohio law, whose goals are closely tied with the ADA, including but not limited to violations of Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code § 4101:1-11, *et sec.*

4. **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located in this

district at/near 5950/6000 South High Street, in the City of Columbus, County of Franklin, State of Ohio and that NEAL's causes of action arose in this district.

**PARTIES:**

5.     NEAL is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning.) NEAL is a "person with physical disabilities," as defined by all applicable Ohio and United States laws. NEAL requires the use of a wheelchair to travel about in public. Consequently, NEAL is a member of that portion of the public whose rights are protected by the provisions of Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code § 4101:1-11, *et sec.* NEAL is a resident of Columbus, Ohio.

6.     Defendant SCIOTO DOWNS, INC., doing business as ELDORADO GAMINGG SCIOTO DOWNS, an Ohio Corporation for Profit, is the owner and operator, lessor and/or lessee, or agents of the owners, lessors and/or lessees, franchisor and/or franchisee, of the building and/or buildings which constitute a public facility in and of itself, occupied by ELDORADO GAMINGG SCIOTO DOWNS, a public accommodation, located at/near 6000 South High Street, Columbus, Ohio, and subject to the requirements of Ohio state law requiring full and equal access to public facilities pursuant to Ohio Revised Code § 4112.02, *et seq*., Ohio Administrative Code § 4101:1-11, *et sec.*, and subject to the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal requirements referred to in this complaint.

7.     Defendant COLUMBUS SOUTHEAST HOTEL GROUP LLC, doing business as

HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, an Ohio Limited Liability Company, is the owner and operator, lessor and/or lessee, or agents of the owners, lessors and/or lessees, franchisor and/or franchisee, of the building and/or buildings which constitute a public facility in and of itself, occupied by HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, a public accommodation, located at/near 5950 South High Street, Columbus, Ohio, and subject to the requirements of Ohio state law requiring full and equal access to public facilities pursuant to Ohio Revised Code § 4112.02, *et seq*., Ohio Administrative Code § 4101:1-11, *et sec.*, and subject to the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal requirements referred to in this complaint.

8.   At all times relevant to this complaint, Defendants are the lessees, or agents of the lessees, and/or lessors, of said premises, a public facility at/near 5950/6000 South High Street, Columbus, Ohio. The businesses are open to the general public and they conduct business therein. The businesses that operate on said premises are public accommodations subject to the requirements of Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code § 4101:1-11, *et sec.*

9.   At all times relevant to this complaint, Defendants are the landlord/lessor, tenant/lessee and the owner and operator of the subject facilities, public accommodations located at/near 5950/6000 South High Street, Columbus, Ohio. As such, Defendants are jointly and severally responsible to identify and remove architectural barriers pursuant to Code of Federal Regulations section 36.201(b), which states in pertinent part:

**§ 36.201       General**

(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 4

requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

CFR §36.201(b)

**PRELIMINARY FACTUAL ALLEGATIONS:**

10. Defendants are the entities that own, lease (or lease to), or operate ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, a racino facility and connecting hotel, located at/near 5950/6000 South High Street, Columbus, Ohio. ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code § 4101:1-11, *et sec.*

11. On information and belief, said facilities have undergone "constructions, alterations, structural repairs and additions," each of which has subjected ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS to handicapped access requirements.

    a. Parts of the Scioto Downs racing facility are subject to the 1991 Americans with Disability Act Standards, and

    b. The rest of ELDORADO GAMINGG SCIOTO DOWNS, as well as the HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS are all subject to the mandatory requirements of the 2020 Americans with Disability Act Standards.

12. NEAL is a person with a disability. NEAL is a "physically disabled person," as defined by all applicable Ohio and United States laws. NEAL is a paraplegic and requires the

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 5

use of a wheelchair for mobility and to travel in public.

13. At all times referred to herein and continuing to the present time, Defendants advertised, publicized and held out ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS as being handicapped accessible and handicapped usable.

14. On or about November 16, 2019, November 17, 2019, January 30, 2020, January 31, 2020, and August 3, 2020 (racino only), NEAL was an invitee and guest at the subject racino and hotel, arriving for purposes of entertainment and lodging.

15. Upon his arrival, during his patronizing of the public accommodations, and upon his exit of the facilities, NEAL personally encountered architectural barriers which denied him the full and equal access to the property.

16. Therefore, at said time and place, NEAL, a person with a disability, encountered the following inaccessible elements of the subject facilities which constituted architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities. By way of example and not as an exhaustive inventory of Defendant's violations, the following barriers to access were personally encountered by NEAL:

## ELDORADO GAMINGG SCIOTO DOWNS

### A. ELDORADO CASINO - GENERALLY

1) At the Eldorado Casino refreshment centers, the fountain controls, dispensers, and condiments are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

2) At the Eldorado Casino bars, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

3) At the Eldorado Casino, there are no accessible slot machines that comply with the ADA work surface requirements in violation of 2010 ADAS Section: 226.1.

4) At the Eldorado Casino, the slot machines are not accessible because there is not adequate clear floor space for either a forward or side approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

5) At the Eldorado Casino, and throughout the slot machine areas, the route of travel at this location does not provide a minimum width of 36 inches in violation of 2010 ADAS Section: 403.5.1 and 2009 ANSI A117.1 Section: 403.5.

6) At the Eldorado Casino's slot machines, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

**B. MENS RESTROOM BY MAIN ENTRANCE**

7) At the men's restroom by the main entrance, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

8) At the men's restroom by the main entrance, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

9) At the men's restroom by the main entrance, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

10) At the men's restroom by the main entrance, the toilet seat cover dispenser is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

11) At the men's restroom by the main entrance, the required 56 inches by 60 inches clear floor space for the water closet has been obstructed by the trash can in violation of 2010 ADAS Section: 604.3.1 and 2009 ANSI A117.1 Section: 604.3.1.

12) At the men's restroom by the main entrance, the shelf is not accessible because there is not adequate clear floor space for an approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

13) At the men's restroom by the main entrance, the shelf is too high and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

14) At the men's restroom by the main entrance, the side grab bar is obstructed in violation of 2010 ADAS Section: 609.3 and 2009 ANSI A117.1 Section: 609.3.

15) At the men's restroom by the main entrance, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

### C. DASH CAFE

16) At the Dash Cafe, there are no accessible dining surfaces in violation of 2010 ADAS Section: 226.1.

17) At the Dash Cafe, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

### D. GIFT SHOP

18) At the Gift Shop, the route of travel at this location does not provide a minimum width of 36 inches in violation of 2010 ADAS Section: 403.5.1 and 2009 ANSI A117.1 Section: 403.5.

19) At the Gift Shop, a portion of the merchandise is not accessible because there is not adequate clear floor space for either a forward or side approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

### E. REFRESHMENT COUNTERS

20) At the refreshment counters, the transaction counters are too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

21) At the refreshment counters, the drink dispensers and cups are not accessible because they are located over an obstruction greater than 34 inches tall in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

22) At the refreshment counters, the floormats are not secured in place at the drinks counter in violation of 2010 ADAS Section: 302.2 and 2009 ANSI A117.1 Section: 302.2.

### F. HIGH ROLLER RESTROOM SOUTH

23) At the High Roller Restroom South, the toilet seat cover dispenser is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

24) At the High Roller Restroom South, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

25) At the High Roller Restroom South, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

26) At the High Roller Restroom South, the toilet is not located within the range allowed from the side wall or partition in violation of 2010 ADAS Section: 604.2 and 2009 ANSI A117.1 Section: 604.2.

27) At the High Roller Restroom South, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

28) At the High Roller Restroom South, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

29) At the High Roller Restroom South, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

### G.  MENS RESTROOM ACROSS FROM DASH CAFE

30) At the Men's restroom across from Dash, the toilet seat cover dispenser is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

31) At the Men's restroom across from Dash, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

32) At the Men's restroom across from Dash, the toilet seat cover dispenser in the type B stall is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

33) At the Men's restroom across from Dash, the toilet seat cover dispenser in the type B stall is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

34) At the Men's restroom across from Dash, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

35) At the Men's restroom across from Dash, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

36) At the Men's restroom across from Dash, the maximum allowable reach cannot be obtained because the knee clearance is obstructed in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

37) At the Men's restroom across from Dash, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

38) At the Men's restroom across from Dash, the toilet seat is not located within the range allowed off the floor in violation of 2010 ADAS Section: 604.4 and 2009 ANSI A117.1 Section: 604.4.

39) At the Men's restroom across from Dash, the locking/latching hardware is not accessible in violation of 2010 ADAS Section: 604.8.1.2.

40) At the Men's restroom across from Dash, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

41) At the Men's restroom across from Dash, a compliant room identification sign is missing on the strike side of the door in violation of 2010 ADAS Section: 216.2 and 2009 ANSI A117.1 Section: 703.1.1.

42) At the Men's restroom across from Dash, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

43) At the Men's restroom across from Dash, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

**H. CASINO BAR SOUTH OF BREW BROTHERS**

44) At the casino bar south of Brew Brothers, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

**I. EVENTS COUNTER**

45) At the Events Counter, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

**J. OPEN AIR TERRACE SE CORNER**

46) At the open-air terrace SE corner, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

47) At the open-air terrace SE corner, the fire alarm is not accessible because there is not adequate clear floor space for either a forward or side approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

**K. OPEN AIR TERRACE WEST**

48) At the open-air terrace west, the bar does not have a low seating space in violation of 2010 ADAS Section: 226.1.

**L. MENS SE CORNER BY OPEN AIR TERRACE**

49) At the men's SE corner by the open-air terrace, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

50) At the men's SE corner by the open-air terrace, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

51) At the men's SE corner by the open-air terrace, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

52) At the men's SE corner by the open air terrace, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

53) At the men's SE corner by the open-air terrace, a compliant room identification sign is missing on the strike side of the door in violation of 2010 ADAS Section: 216.2 and 2009 ANSI A117.1 Section: 703.1.1.

54) At the men's SE corner by the open-air terrace, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

55) At the men's SE corner by the open air terrace, the shelf in the type B stall is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

56) At the men's SE corner by the open air terrace, the toilet seat cover dispenser in the type B stall is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

57) At the men's SE corner by the open air terrace, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

**M. REFRESHMENTS COUNTER SOUTH WALL**

58) At the refreshments counter on the south wall, the drink dispenser counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

59) At the refreshments counter on the south wall, the drink dispensers and cups are not accessible because they are, is located over an obstruction greater than 34 inches tall and > 48" aff in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

60) At the refreshments counter on the south wall, the floormat is not secured in place at the drinks counter in violation of 2010 ADAS Section: 302.2 and 2009 ANSI A117.1 Section: 302.2.

### N.  MENS RESTROOM BY SMOKING PATIO

61) At the men's restroom by the smoking patio, a compliant room identification sign is missing on the strike side of the door in violation of 2010 ADAS Section: 216.2 and 2009 ANSI A117.1 Section: 703.1.1,

62) At the men's restroom by the smoking patio, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

63) At the men's restroom by the smoking patio, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

64) At the men's restroom by the smoking patio, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

65) At the men's restroom by the smoking patio, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

66) At the men's restroom by the smoking patio, the maximum allowable reach cannot be obtained because the knee clearance is obstructed in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

67) At the men's restroom by the smoking patio, the toilet seat cover dispenser is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

68) At the men's restroom by the smoking patio, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

69) At the men's restroom by the smoking patio, the toilet seat cover dispenser in the type B stall is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

70) At the men's restroom by the smoking patio, the shelf in the type B stall is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

71) At the men's restroom by the smoking patio, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

72) At the men's restroom by the smoking patio, the shelf is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2, 603.4 and 2009 ANSI A117.1 Section: 308.2.2, 603.4.

**O. UPPER BAR**

73) At the Upper Bar, the credit card reader is not accessible because it is located over an obstruction greater than 34 inches tall in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

74) At the Upper Bar, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

75) At the Upper Bar, the tabletop GAMINGg is out of reach range because the depth of the obstruction is greater than 25 inches in violation of 2010 ADAS Section: 308.2.2 and 2009 ANSI A117.1 Section: 308.2.2.

76) At the Upper Bar, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

**P. SCIOTO DOWNS HORSE RACING**

77) At Scioto Downs, the entrance is not accessible and is missing signage in violation of 2010 ADAS Section: 216.6.

78) At Scioto Downs, the accessible route on the site contains running slopes greater than 5% and has not been constructed as a ramp (i.e. handrails, wheel guides, etc.) in violation of 2010 ADAS Section: 403.3 and 2009 ANSI A117.1 Section: 403.3.

79) At Scioto Downs, there are no accessible outdoor dining surfaces in violation of 2010 ADAS Section: 226.1.

80) At Scioto Downs, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

81) At Scioto Downs, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

82) At Scioto Downs, the wheelchair seating spaces are not on an accessible route in violation of 2010 ADAS Section: 802.1.4, 802.1.5 and 2009 ANSI A117.1 Section: 802.5.

83) At Scioto Downs, the vending machines are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

84) At Scioto Downs, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

85) At Scioto Downs, the off-track wagering machines are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

### Q. SCIOTO DOWNS CLUBHOUSE

86) At Scioto Downs Clubhouse, the doormats are not secured in place at the entry door in violation of 2010 ADAS Section: 302.2 and 2009 ANSI A117.1 Section: 302.2.

87) At Scioto Downs Clubhouse, the bar does not have a low seating space in violation of 2010 ADAS Section: 226.1.

88) At Scioto Downs Clubhouse, the off-track wagering machines are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

89) At Scioto Downs Clubhouse, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

90) At Scioto Downs Clubhouse, the floor mats are not secured in place at the service counter in violation of 2010 ADAS Section: 302.2 and 2009 ANSI A117.1 Section: 302.2.

91) At Scioto Downs Clubhouse, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

92) At Scioto Downs Clubhouse, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

93) At the Scioto Downs Clubhouse, the transaction counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.

94) At the Scioto Downs Clubhouse, the off-track wagering machines are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

95) At the Scioto Downs Clubhouse, the handrail does not have the required extension at the top of the stair flight in violation of 2010 ADAS Section: 505.10.2 and 2009 ANSI A117.1 Section: 505.10.2.

96) At the Scioto Downs Clubhouse, the handrail does not have a compliant extension at the bottom of the stair flight in violation of 2010 ADAS Section: 505.10.3 and 2009 ANSI A117.1 Section: 505.10.3.

97) At the Scioto Downs Clubhouse, the ramp does not have compliant handrails in violation of 2010 ADAS Section: 505.1 and 2009 ANSI A117.1 Section: 505.1.

98) At the Scioto Downs Clubhouse, the handrail does not extend past the ramp in violation of 2010 ADAS Section: 505.10.1 and 2009 ANSI A117.1 Section: 505.10.1, 505.10.2.

99) At the Scioto Downs Clubhouse, the handrails on the ramp do not have compliant shape in violation of 2010 ADAS Section: 505.7, 505.7.1, 505.7.2 and 2009 ANSI A117.1 Section: 505.7, 505.7.1, 505.7.2.

100) At the Scioto Downs Clubhouse, the ramp's slope exceeds the maximum running slope (direction of travel) allowable of 8.33% in violation of 2010 ADAS Section: 405.2 and 2009 ANSI A117.1 Section: 405.2.

101) At the Scioto Downs Clubhouse, the ramp is too long and too high without an intermediate landing. The maximum rise for a ramp with an 8.33% slope is 30 inches in violation of 2010 ADAS Section: 405.6 and 2009 ANSI A117.1 Section: 405.6.

102) At the Scioto Downs Clubhouse, the vending machines are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

### R. CLUBHOUSE MENS RESTROOM NORTH

103) At the clubhouse men's restroom north, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

104) At the clubhouse men's restroom north, the door exceeds the maximum pressure to open the door in violation of 2010 ADAS Section: 404.2.9 and 2009 ANSI A117.1 Section: 404.2.8.

105) At the clubhouse men's restroom north, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

106) At the clubhouse men's restroom north, knee clearance at 27 inches off the floor is not 8 inches minimum deep in violation of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.3.

107) At the clubhouse men's restroom north, the water closet compartment door is missing a loop handle on the inside in violation of 2010 ADAS Section: 604.8.1.2 and 2009 ANSI A117.1 Section: 604.9.3.

108)     At the clubhouse men's restroom north, the compartment door is not self-closing in violation of 2010 ADAS Section: 604.8.1.2 and 2009 ANSI A117.1 Section: 604.9.3.

109)     At the clubhouse men's restroom north, the coat hook is installed greater than 48 inches above the finished floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

110)     At the clubhouse men's restroom north, the side grab bar is not long enough in violation of 2010 ADAS Section: 604.5.1 and 2009 ANSI A117.1 Section: 604.5.1.

111)     At the clubhouse men's restroom north, the side grab bar does not extend far enough from the rear wall in violation of 2010 ADAS Section: 604.5.1 and 2009 ANSI A117.1 Section: 604.5.1.

112)     At the clubhouse men's restroom north, the rear grab bar is missing in violation of 2010 ADAS Section: 609.4 and 2009 ANSI A117.1 Section: 609.4.1.

113)     At the clubhouse men's restroom north, the toilet compartment is not wide enough in violation of 2010 ADAS Section: 604.8.1.1 and 2009 ANSI A117.1 Section: 604.9.2.1.

114)     At the clubhouse men's restroom north, the room contains 6 or more fixtures and therefore must have a minimum of one ambulatory toilet stall in violation of 2010 ADAS Section: 213.3.1.

## S.  CLUBHOUSE MENS RESTROOM SOUTH

115)     At the clubhouse men's restroom south, the restroom is missing the International Symbol of Accessibility (ISA) in violation of 2010 ADAS Section: 216.8.

116)     At the clubhouse men's restroom south, the door exceeds the maximum pressure to open the door in violation of 2010 ADAS Section: 404.2.9 and 2009 ANSI A117.1 Section: 404.2.8.

117)     At the clubhouse men's restroom south, the rim of the urinal is too high in violation of 2010 ADAS Section: 605.2 and 2009 ANSI A117.1 Section: 605.2.

118)     At the clubhouse men's restroom south, the compartment stall is not compliant in violation of 2010 ADAS Section: 603.1 and 2009 ANSI A117.1 Section: 603.1.

119)     At the clubhouse men's restroom south, the light switch is too high and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

120)     The toilet seat cover dispenser is mounted too high and is not located in an accessible location in violation of 2010 ADAS Section: 205.1 and 2009 ANSI A117.1 Section: 308.1.

## HAMPTON INN & SUITES, COLUMBUS SCIOTO DOWNS

### A. HAMPTON INN PARKING LOT

1) At the Hampton Inn Parking Lot, at the parking stall nearest the entrance, the cross slopes (narrow dimension) and/or running slopes (long dimension) of the accessible stall exceeds 2% in violation of 2010 ADAS Section: 502.4 and 2009 ANSI A117.1 Section: 502.5

2) At the Hampton Inn Parking Lot, the cross slope (short dimension) of the access aisle between the nearest and 2nd stalls exceeds 2% in violation of 2010 ADAS Section: 502.4 and 2009 ANSI A117.1 Section: 502.5.

3) At the Hampton Inn Parking Lot, the cross slope (narrow dimension) of the 2nd parking stall exceeds 2% in violation of 2010 ADAS Section: 502.4 and 2009 ANSI A117.1 Section: 502.5.

4) At the Hampton Inn Parking Lot, the running slope (long dimension) of the 3rd accessible parking stall exceeds 2% in violation of 2010 ADAS Section: 502.4 and 2009 ANSI A117.1 Section: 502.5.

5) At the Hampton Inn Parking Lot, the cross slope (short dimension) of the 3rd access aisle exceeds 2% in violation of 2010 ADAS Section: 502.4 and 2009 ANSI A117.1 Section: 502.5.

6) At the Hampton Inn Parking Lot, there are approximately 500 parking stalls that could be reasonably associated with the front portion of the hotel facility in the shared parking lot in violation of 2010 ADAS Section: 208.2.

7) At the Hampton Inn Parking Lot, there are approximately 109 parking stalls that could be reasonably associated with the back portion/rear entry of the hotel facility in the shared parking lot in violation of 2010 ADAS Section: 208.2.

8) At the Hampton Inn Parking Lot, the ramp does not have compliant handrails in violation of 2010 ADAS Section: 505.1 and 2009 ANSI A117.1 Section: 505.1.

9) At the Hampton Inn Parking Lot, the ramp does not have protection against wheel entrapment in violation of 2010 ADAS Section: 405.9.2 and 2009 ANSI A117.1 Section: 405.9.2, 405.9.2.2.

10) At the Hampton Inn Parking Lot, the ramp does not have an extended floor surface beyond the ramp handrails in violation of 2010 ADAS Section: 405.9.1 and 2009 ANSI A117.1 Section: 405.9.1.

**B. HAMPTON LOBBY/RECEPTION AREA**

11) At the Hampton Lobby/Reception Area the card reader is not accessible because it is located over an obstruction greater than 34 inches tall in violation of 2010 ADAS Section: 308.3.2 and 2009 ANSI A117.1 Section: 308.3.2.

**C. HAMPTON'S MEN'S RESTROOM NEAREST THE LOBBY**

12) At the Hampton's Men Restroom nearest the lobby, the door exceeds the maximum pressure to open the door in violation of 2010 ADAS Section: 404.2.9 and 2009 ANSI A117.1 Section: 404.2.8.

13) At the Hampton's Men's Restroom nearest the lobby, the entry door coat hook is installed greater than 48 inches above the finished floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

14) At the Hampton's Men's Restroom nearest the lobby, the maneuvering clearance at the door is obstructed in violation of 2010 ADAS Section: 404.2.4.1 and 2009 ANSI A117.1 Section: 404.2.3.1, 404.2.3.2, 404.2.3.3.

15) At the Hampton's Men's Restroom nearest the lobby, the flush handle is located on the wrong side of the toilet in violation of 2010 ADAS Section: 604.6 and 2009 ANSI A117.1 Section: 604.6.

16) At the Hampton's Men's Restroom nearest the lobby, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

17) At the Hampton's Men's Restroom nearest the lobby, the lavatory projects into the clear floor space required for the toilet in violation of 2010 ADAS Section: 604.3.2 and 2009 ANSI A117.1 Section: 604.3.3.

18) At the Hampton's Men's Restroom nearest the lobby, the water and drainpipes under the lavatory are not adequately insulated in violation of 2010 ADAS Section: 606.5 and 2009 ANSI A117.1 Section: 606.6, 1003.12.4.4.

19) At the Hampton's Men's Restroom nearest the lobby, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

20) At the Hampton's Men's Restroom nearest the lobby, the soap dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

21) At the Hampton's Men's Restroom nearest the lobby, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

22) At the Hampton's Men's Restroom nearest the lobby, the flush handle is located on the wrong side of the toilet in violation of 2010 ADAS Section: 604.6 and 2009 ANSI A117.1 Section: 604.6.

## D. HAMPTON POOL AREA

23) At the Hampton pool, the lift had no power and could not be operated in violation of 2010 ADAS Section: 242.2 and 2009 ANSI A117.1 Section: 1109.1.1.

24) At the Hampton pool, the route of travel at this location does not provide a minimum width of 36 inches in violation of 2010 ADAS Section: 403.5.1 and 2009 ANSI A117.1 Section: 403.5.

25) At the Hampton pool, the tactile sign is incorrectly located in violation of 2010 ADAS Section: 703.4.2 and 2009 ANSI A117.1 Section: 703.3.11.

## E. HAMPTON LOBBY HALLWAY

26) At the Hampton Lobby hallway, there is not enough knee clearance under the drinking fountain in violation of 2010 ADAS Section: 602.2 and 2009 ANSI A117.1 Section: 602.2.

## F. HAMPTON BREAKFAST AREA

27) At the Hampton Breakfast area, there are no accessible dining surfaces in violation of 2010 ADAS Section: 226.1.

28) At the Hampton Breakfast area, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1 and 2009 ANSI A117.1 Section: 306.2.1, 306.2.2.

## G. HAMPTON'S MEN'S RESTROOM NEAREST CASINO

29) At the Hampton's Men's Restroom nearest the Casino, the door exceeds the maximum pressure to open the door in violation of 2010 ADAS Section: 404.2.9 and 2009 ANSI A117.1 Section: 404.2.8.

30) At the Hampton's Men's Restroom nearest the Casino, the entry door coat hook is installed greater than 48 inches above the finished floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

31) At the Hampton's Men's Restroom nearest the Casino, the compartment door is not self-closing in violation of 2010 ADAS Section: 604.8.1.2 and 2009 ANSI A117.1 Section: 604.9.3.

32) At the Hampton's Men's Restroom nearest the Casino, the stall door coat hook is installed greater than 48 inches above the finished floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

33) At the Hampton's Men's Restroom nearest the Casino, the water closet compartment door is missing a loop handle on the inside in violation of 2010 ADAS Section: 604.8.1.2 and 2009 ANSI A117.1 Section: 604.9.3.

34) At the Hampton's Men's Restroom nearest the Casino, the toilet compartment is not wide enough in violation of 2010 ADAS Section: 604.8.1.1 and 2009 ANSI A117.1 Section: 604.9.2.1.

35) At the Hampton's Men's Restroom nearest the Casino, the toilet is not located within the range allowed from the side wall or partition in violation of 2010 ADAS Section: 604.2 and 2009 ANSI A117.1 Section: 604.2.

36) At the Hampton's Men's Restroom nearest the Casino, the flush handle is located on the wrong side of the toilet in violation of 2010 ADAS Section: 604.6 and 2009 ANSI A117.1 Section: 604.6.

37) At the Hampton's Men's Restroom nearest the Casino, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

38) At the Hampton's Men's Restroom nearest the Casino, the urinal is confined on three sides (alcove) in violation of 2010 ADAS Section: 305.7.1 and 2009 ANSI A117.1 Section: 605.2.

39) At the Hampton's Men's Restroom nearest the casino, the paper towel dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

40) At the Hampton's Men's Restroom nearest the casino, the soap dispenser's operation mechanism is too high off the floor in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

41) At the Hampton's Men's Restroom nearest the casino, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

42) At the Hampton's Men's Restroom nearest the casino, the electrical outlet is too high and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

## H. HAMPTON ROOM 109

43) At the Hampton's Room 109, the toe space is missing at the bottom of the lavatory in violation of 2010 ADAS Section: 306.2.4 and 2009 ANSI A117.1 Section: 306.2.4.

44) At the Hampton's Room 109, the apron at the sink projects too low to the floor in violation of 2010 ADAS Section: 306.3.1 and 2009 ANSI A117.1 Section: 306.3.1.

45) At the Hampton's Room 109, the shower stall is not open along its full width in violation of 2010 ADAS Section: 608.2.2.

46) At the Hampton's Room 109, the shower seat is not located on the correct wall in violation of 2010 ADAS Section: 610.3.

47) At the Hampton's Room 109, the operable parts of controls are not located correctly in violation of 2010 ADAS Section: 608.5.2.

48) At the Hampton's Room 109, the handheld sprayer unit is not located on the wall correctly in violation of 2010 ADAS Section: 608.5.3.

49) At the Hampton's Room 109, the handheld sprayer unit is not equipped with a non-positive on/off control, in violation of 2010 ADAS Section: 608.6 and 2009 ANSI A117.1 Section: 608.5,

50) At the Hampton's Room 109, the grab bar is not positioned correctly in violation of 2010 ADAS Section: 609.4.

51) At the Hampton's Room 109, the required clear floor space is not wide enough in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

52) At the Hampton's Room 109, the clear floor space only allows for a forward approach and the towel shelf is out of reach range in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

53) At the Hampton's Room 109, the towel hooks are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1,

54) At the Hampton's Room 109, the toilet is not located within the range allowed from the side wall or partition in violation of 2010 ADAS Section: 604.2 and 2009 ANSI A117.1 Section: 604.2.

55) At the Hampton's Room 109, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

56) At the Hampton's Room 109, the side grab bar does not extend far enough from the rear wall in violation of 2010 ADAS Section: 604.5.1 and 2009 ANSI A117.1 Section: 604.5.1.

57) At the Hampton's Room 109, the grab bar is obstructed in violation of 2010 ADAS Section: 609.3 and 2009 ANSI A117.1 Section: 609.3.

58) At the Hampton's Room 109, the side grab bar is too high in violation of 2010 ADAS Section: 609.4 and 2009 ANSI A117.1 Section: 609.4.1.

59) At the Hampton's Room 109, the rear grab bar is too high in violation of 2010 ADAS Section: 609.4 and 2009 ANSI A117.1 Section: 609.4.1.

60) At the Hampton's Room 109, the sign providing directional and information is noncompliant in violation of 2010 ADAS Section: 216.3 and 2009 ANSI A117.1 Section: 703.1.2.

61) At the Hampton's Room 109, the pull-out kitchenette shelf is too low and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

62) At the Hampton's Room 109, the climate control is too high and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

63) At the Hampton's Room 109, the route of travel at this location does not provide a minimum width of 36 inches in violation of 2010 ADAS Section: 403.5.1 and 2009 ANSI A117.1 Section: 403.5.

64) At the Hampton's Room 109, compliant knee clearance is not provided at the nightstand in violation *of 2010 ADAS Section: 306.3.3 and 2009 ANSI A117.1 Section: 306.3.1, 306.3.3,306.3.2.*

On personal knowledge, information and belief, other public facilities and elements too numerous to list were improperly inaccessible for use by persons with physical disabilities.

17. The discriminatory violations described in ¶ 16 are not an exclusive list of the Defendant's violations. NEAL requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the

Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code §4101:1-11, *et sec.*

18. At all times stated herein, the existence of architectural barriers at Defendants' place of public accommodation evidenced "actual notice" of Defendants' intent not to comply with the Americans with Disability Act of 1990 ("title III" and "ADA"), 42. U.S.C. §§ 12181 *et seq.*, Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code §4101:1-11, *et sec.* either then, now or in the future.

19. As a legal result of Defendants' failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to NEAL and other persons with disabilities, NEAL suffered damages as alleged herein.

20. As a further legal result of the actions and failure to act of Defendants, and as a legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, NEAL was denied his civil rights to full and equal access to public facilities. NEAL suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from personal injury, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.

21. NEAL is "physically handicapped," "physically disabled," or a "person with physical disabilities" who was denied his rights to equal access to a public facility by Defendants. Defendants maintained a public establishment without access for persons with physical disabilities as stated herein, and continue as of the date of filing this complaint to deny

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 23

equal access to NEAL and other persons with physical disabilities in these and other ways.

22. On information and belief, construction and/or alterations carried out by Defendants have triggered access requirements under Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code §4101:1-11, *et sec.*

23. NEAL, as described herein below, seeks injunctive relief to require ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS to be made accessible to meet the requirements of both Ohio law and the Americans with Disabilities Act, whichever is more restrictive, so long as Defendants operate and/or lease ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS as public facilities. NEAL seeks damages for violation of his civil rights, from November 16, 2019 until such date as Defendants bring the establishments into full compliance with the requirements of Ohio and federal law.

24. On information and belief, Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

25. Because of Defendants' violations, NEAL and other persons with physical disabilities are unable to use public facilities such as those owned and operated by Defendants on a "full and equal" basis unless such facilities are in compliance with the provisions of the

26. Americans with Disabilities Act and other accessibility law as plead herein. NEAL seeks an order from this court compelling Defendants to make ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS accessible to persons with disabilities.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 24

27. On information and belief, Defendants have intentionally undertaken to modify and alter existing building(s), and have failed to make them comply with accessibility requirements. The acts and omissions of Defendants in failing to provide the required accessible public facilities at the time of NEAL's visit and injuries, indicate actual and implied malice towards NEAL, and despicable conduct carried out by Defendants with a willful and conscious disregard for the rights and safety of NEAL and other similarly situated persons, and justify punitive damages pursuant to Ohio Revised Code § 2315.21, in amounts sufficient to make a more profound example of Defendants to other operators of other establishment and other public facilities, and to punish Defendants and to carry out the purposes of § 2315.21.

28. NEAL is informed and believes and therefore alleges that Defendants caused the subject facility to be constructed, altered and maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said building of Defendants and were denied full and equal use of said public facilities. Further, on information and belief, Defendants have continued to maintain and operate said facilities in such conditions up to the present time, despite actual and constructive notice to such Defendants that the configuration of the establishment and/or its building(s) is in violation of the civil rights of persons with physical disabilities, such as NEAL and the disability community. Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of law as stated in Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.* and elsewhere in the laws of Ohio.

29. On information and belief, the subject public facilities and building(s) of ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS denied full and equal access to NEAL and other persons with physical

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 25

disabilities in other respects due to noncompliance with requirements of Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code §4101:1-11, *et sec.*

30. On personal knowledge, information and belief, the basis of Defendants' actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS was in violation of the civil rights of persons with physical disabilities, such as NEAL, includes, but is not limited to, communications with invitees and guests, owners of other establishments and businesses, notices Defendants obtained from governmental agencies upon modification, improvement, or substantial repair of the subject premises and other properties owned by these Defendants, newspaper articles and trade publications regarding the Americans with Disabilities Act and other access laws, public service announcements, and other similar information. Defendants' failure, under state and federal law, to make the establishment accessible is further evidence of Defendants' conscious disregard for the rights of NEAL and other similarly situated persons with disabilities. The scope and means of the knowledge of Defendants are within Defendants' exclusive control and cannot be ascertained except through discovery. Despite being informed of such effect on NEAL and other persons with physical disabilities due to the lack of accessible facilities, Defendants knowingly and willfully refused to take any steps to rectify the situation and to provide full and equal access for NEAL and other persons with physical disabilities to the establishment. Said Defendants have continued such practices, in conscious disregard for the rights of NEAL and other persons with physical disabilities, up to the date of filing of this complaint, and continuing thereon. Defendants have further actual knowledge of the architectural barriers referred to herein by virtue of the notices addressed to the Defendants, which are

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 26

discussed below. Said conduct, with knowledge of the effect it was and is having on NEAL and other persons with physical disabilities, constitutes despicable conduct in conscious disregard of the rights and safety of NEAL and of other similarly situated persons, justifying the imposition of punitive damages.

31. Punitive Damages -- Defendants, at times prior to and including November 16, 2019 and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all portions of this public facility. Despite such knowledge, Defendants failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by NEAL and other similarly situated persons with disabilities, including the specific notices referred to in this complaint. Defendants have failed and refused to take action to grant full and equal access to persons with physical disabilities in the respects complained of hereinabove. Defendants have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of handicap access and has refused to comply with its legal obligations to make ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS accessible pursuant to the Americans with Disabilities Act and Ohio law. Such actions and continuing course of conduct by Defendants evidence despicable conduct in conscious disregard for the rights or safety of NEAL and of other similarly situated persons, justifying an award of punitive damages.

32. Defendants' actions have also been oppressive to persons with physical disabilities and of other members of the public, and have evidenced actual or implied malicious intent toward those members of the public, such as NEAL and other persons with physical disabilities who have been denied the proper access they are entitled to by law. Further,

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 27

Defendants' refusals on a day-to-day basis to remove the barriers complained of herein evidence despicable conduct in conscious disregard for the rights of NEAL and other members of the public with physical disabilities.

33. NEAL prays for an award of punitive damages against Defendants in an amount sufficient to make a more profound example of Defendants and discourage owners and operators of other establishments, and other public facilities, from willful disregard of the rights of persons with physical disabilities. Plaintiff does not know the financial worth of Defendants and seeks leave to amend this complaint when such facts are known.

34. NEAL will return to ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, because he enjoys the casino, race track, entertainment, food and drinks, hotel accommodations, location, and atmosphere there, if the facilities are made fully accessible to a disabled person in a wheelchair, and to also avail himself of the racino an hotel's services. Furthermore, NEAL intends to return to the facilities as an ADA tester to ascertain whether Defendant removed the barriers to access which are the subject of this litigation.

**CLASS ALLEGATIONS**

35. Plaintiff SPENCER NEAL bring this action on behalf of himself and all persons similarly situated and seeks class certification pursuant to Federal Rule of Civil Procedure 23 as set forth below.

36. **Class Definitions**. The four classes that Plaintiff seeks to represent are comprised of the following. The first class of persons seeks statutory damages under Ohio Revised Code Chapter 4112, *et seq.,* and is defined as follows: **All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased, attempted to purchase, or**

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 28

for whom third parties purchased a mobility accessible guestroom at HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS and who have been denied equal access to the hotel's facilities, services, amenities, and privileges since November 16, 2019 through the conclusion of this action.

37. The second class of persons seeks statutory damages under Ohio Revised Code Chapter 4112, *et seq.,* and is defined as follows: **All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have utilized or attempted to utilize any form of GAMINGg, horse betting, entertainment, service, or amenity at ELDORADO GAMINGG SCIOTO DOWNS and who have been denied equal access to the racino's facilities, services, amenities, and privileges since November 16, 2019 through the conclusion of this action.**

38. The third class of persons seeks declaratory and injunctive relief, and is defined as follows: **All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who will attempt to purchase a mobility accessible guestroom at HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS and who will be denied equal access to the facilities, services, amenities, and privileges since November 16, 2019 through the conclusion of this action.**

39. The fourth class of persons seeks declaratory and injunctive relief, and is defined as follows: **All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who will attempt to utilize the amenities at ELDORADO GAMINGG SCIOTO DOWNS and who will be denied equal access to the facilities, services, amenities, and privileges since November 16, 2019 through the conclusion of this action.**

40. Excluded from the above-referenced class definitions are the officers, directors, and

employees of Defendants, and any of Defendants' shareholders or other persons who hold a financial interest in Defendants. Also excluded is any judge assigned to hear this case (or any spouse or family member of any assigned judge), or any juror selected to hear this case.

41. This action is brought as a class action and may properly be so maintained pursuant to Federal Rule of Civil Procedure 23 and applicable case law. In addition to declaratory and injunctive relief, this action seeks classwide damages pursuant to Ohio Revised Code Chapter 4112 in the amount of $4,000 per violation per occurrence based on Defendants' wrongful policy and practice of failing to provide full and equal access to the hotel and racino as alleged herein. This action does not seek class recovery for actual damages, personal injuries or emotional distress that may have been caused by Defendants' conduct alleged herein. The named Plaintiff seeks compensatory damages for himself individually.

42. **Impracticability of Joinder (Numerosity of the Class)**. The members of the proposed classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court. On information and belief, the number of persons in this case exceeds 1,000 persons. The number of persons in the class and their identities and contact information may be ascertained from Defendants' records.

43. **Questions of Fact and Law Common to the Class**. All members of the classes have been and continue to be denied their civil rights to full and equal access to, and use and enjoyment of, the services and facilities operated by the Defendants because of the violations of disability nondiscrimination laws alleged herein. There are numerous questions of law and fact common to the class, including, but not limited to, the following:

    a. Whether Defendants SCIOTO DOWNS, INC. and COLUMBUS SOUTHEAST

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 30

HOTEL GROUP LLC are the owners, operators or lessors of a public accommodation within the meaning of Title III of the ADA;

b. Whether Defendants' establishments are places of public accommodations within the meaning of Chapter 4112 of the Ohio Revised Code.

c. Whether Defendants constructed ELDORADO GAMING SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS and their related facilities after March 15, 2012;

d. Whether parts of the ELDORADO GAMING SCIOTO DOWNS horse racing facility complies with the Americans with Disabilities Act Accessibility Guidelines of 1991 ("ADAAG");

e. Whether ELDORADO GAMING SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS's facilities comply with the 2010 ADA Standards for Accessible Design;

f. Whether ELDORADO GAMING SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS facilities comply with Ohio Building Code and 2009 ANSI A117.1 as it pertains to disability access;

g. Whether Defendants are violating Ohio Revised Code Chapter 4112, et seq., by failing to provide full and equal access to people with mobility disabilities;

h. Whether Defendant are violating the Americans with Disabilities Act, Title III, et seq., by failing to provide full and equal access to people with mobility disabilities;

i. Whether Defendants, by their actions and omissions alleged herein, have engaged in a pattern and practice of discriminating against Plaintiff and other persons with

mobility disabilities in violation of applicable state and federal disability civil rights laws;

j. Whether the Plaintiff and the members of the putative classes are entitled to damages, and the nature of such damages; and,

k. Whether the Plaintiff and the members of the putative classes are entitled to declaratory and/or injunctive relief, and the nature of such relief.

44. **Typicality**. The claims of the named Plaintiff is typical of those of the class. Plaintiff's claims are typical of the claims of the proposed class in the following ways: 1) Plaintiff is a member of the proposed class; 2) Plaintiff's claims arise from the same physical barriers, procedures, practices and course of conduct on the part of Defendants; 3) Plaintiff's claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; 4) the injuries suffered by the named Plaintiff is similar to the injuries suffered by the proposed class members; and 5) the relief sought herein will benefit the named Plaintiff and all class members alike. The claims of Plaintiff are typical of those of the proposed class of persons with mobility disabilities.

45. **Adequacy**. The named Plaintiff will fairly and adequately represent the interests of the respective classes. The named Plaintiff has no interests adverse to the interests of other members of the proposed classes, and has retained counsel who is competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

46. **Predominance**. With respect to Plaintiff's claims under the ADA and Ohio Revised Code Chapter 4112, et seq., class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the class members predominate over any questions affecting only individual members of the proposed classes.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 32

47. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy because, inter alia: 1) individual claims by the class members would be impracticable because the costs of pursuit of such claims would far exceed what any individual class member has at stake; 2) relatively little individual litigation has been commenced over the controversies alleged in this Complaint and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions; 3) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; 4) the proposed class is manageable, and no difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action; 5) the proposed class members are readily identifiable from Defendants' own records; and 6) prosecution of separate actions by individual members of the proposed class would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed class that would establish incompatible standards of conduct for Defendants.

48. **The Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted and refused to act on grounds generally applicable to the class, making the declaratory and injunctive relief sought on behalf of the class as a whole appropriate.

49. Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue in their illegal course of conduct which will result in further damages and injuries to the Plaintiffs and the proposed classes.

I. **FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**

50. NEAL pleads and incorporate by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 49 of this complaint.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 33

51.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C.

§12101 regarding persons with physical disabilities, finding that laws were needed to more fully

protect:

> some 43 million Americans with one or more physical or mental
> disabilities; [that] historically society has tended to isolate and
> segregate individuals with disabilities; [that] such forms of
> discrimination against individuals with disabilities continue to be a
> serious and pervasive social problem; [that] the nation's proper
> goals regarding individuals with disabilities are to assure equality
> of opportunity, full participation, independent living and economic
> self-sufficiency for such individuals; [and that] the continuing
> existence of unfair and unnecessary discrimination and prejudice
> denies people with disabilities the opportunity to compete on an
> equal basis and to pursue those opportunities for which our free
> society is justifiably famous.

52.     Congress stated as its purpose in passing the Americans with Disabilities Act of

1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and
> comprehensive national mandate for the elimination of
> discrimination against individuals with disabilities; (2) to provide
> clear, strong, consistent, enforceable standards addressing
> discrimination against individuals with disabilities; (3) to ensure
> that the Federal government plays a central role in enforcing the
> standards established in this act on behalf of individuals with
> disabilities; and (4) to invoke the sweep of Congressional
> authority, including the power to enforce the 14th Amendment and
> to regulate commerce, in order to address the major areas of
> discrimination faced day to day by people with disabilities.

53.     As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"),

Congress passed "Title III - Public Accommodations and Services Operated by Private Entities"

(Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for

purposes of this title was:

> (7) PUBLIC ACCOMMODATION - The following private
> entities are considered public accommodations for purposes of this
> title, if the operations of such entities affect commerce -

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 34

(A) an inn, hotel, motel, or other place of lodging ***;

(B) an entertainment facility, bar, or other establishment serving food or drink;

42 U.S.C. §12181(7)(B).

54. Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

55. The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

(i) the imposition or application of eligibility criteria
that screen out or tend to screen out an individual with a disability
or any class of individuals with disabilities from fully and equally
enjoying any goods, services, facilities, privileges, advantages, or
accommodations, unless such criteria can be shown to be
necessary for the provision of the goods, services, facilities,
privileges, advantages, or accommodations being offered;

(ii) a failure to make reasonable modifications in
policies, practices, or procedures, when such modifications are
necessary to afford such goods, services, facilities, privileges,
advantages or accommodations to individuals with disabilities,
unless the entity can demonstrate that making such modifications
would fundamentally alter the nature of such goods, services,
facilities, privileges, advantages, or accommodations;

(iii) a failure to take such steps as may be necessary to
ensure that no individual with a disability is excluded, denied
services, segregated or otherwise treated differently than other
individuals because of the absence of auxiliary aids and services,
unless the entity can demonstrate that taking such steps would
fundamentally alter the nature of the good, service, facility,
privilege, advantage, or accommodation being offered or would
result in an undue burden;

(iv) a failure to remove architectural barriers, and
communication barriers that are structural in nature, in existing

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 35

facilities . . . where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

The acts of Defendants set forth herein were a violation of NEAL's rights under the ADA, 42. U.S.C. §§ 12181 *et seq.;* Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code § 4101:1-11, *et sec.*, making available damage remedies.

56.     The removal of the barriers complained of by NEAL as hereinabove alleged was at all times after January 26, 1992, making compliance with the ADA mandatory. With the possible exception of parts of the Scioto Downs horse racing facility, construction work on, and modifications of, the subject building(s) of ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA.

57.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, §308, NEAL is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that he is about to be subjected to discrimination in violation of §302. NEAL cannot return to or make use of the public facilities complained of herein so long as the premises and Defendants' policies bar full and equal use by persons with physical disabilities.

58.     Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or

organization covered by this title does not intend to comply with its provisions." Pursuant to this last section, NEAL has not returned to Defendants' premises since on or about August 3, 2020, but on information and belief, alleges that Defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

59.     NEAL seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. NEAL will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

60.     NEAL seeks damages pursuant to Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code § 4101:1-11, *et sec.*, which provide, within the statutory scheme, that a violation of the ADA and/or Ohio's accessibility standards is a violation of Ohio law.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

## II.     SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO REVISED CODE § 4112.02, *et seq*.

61.     Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 60 of this complaint.

62.     At all times relevant to this action, Ohio Revised Code § 4112.0254 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability. This section provides that:

It shall be an unlawful discriminatory practice:

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 37

(G)     For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

63.     ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS are places of public accommodation pursuant to Ohio Revised Code § 4112.01(A)(9).

64.     Defendants committed an unlawful act pursuant to Ohio Revised Code § 4112.02(G) by denying NEAL the full enjoyment of its accommodations, advantages, facilities, or privileges, whereas, NEAL had great difficulty due to extensive barriers for patrons confined to wheelchairs.

65.     Pursuant to Ohio Revised Code § 4112.99, NEAL is entitled to compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

66.     A separate act in violation of Ohio Revised Code § 4112.02(G) has been committed each day that Defendants act or fail to act and/or knowingly and willfully fail and refuse to remove each architectural barrier or policy and procedure barrier presently existing at the subject public accommodation which denies full and equal access for persons with physical disabilities to said building(s), elements and facilities of ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS. NEAL has been denied full and equal access on an ongoing basis since the date of his first visit. As a legal result, NEAL is entitled to seek appropriate relief, such as damages, pursuant to Ohio Revised Code §

4112.99.

67.     On November 16, 2019, November 17, 2019, January 30, 2020, January 31, 2020, and August 3, 2020 (racino only), NEAL suffered violations of Ohio Revised Code § 4112.02(G) in that NEAL was denied access to the facilities as stated herein and on the basis that NEAL was a person with physical disabilities.

68.     As a result of the denial of equal access to Defendants' facilities due to the acts and omissions of Defendants in owning, operating and maintaining these subject public facilities, NEAL suffered violations of his civil rights, as well as suffering from personal injury, shame, humiliation, embarrassment, frustration, anger, chagrin, disappointment and worry, all of which are expectedly and naturally associated with a denial of access to a person with physical disabilities, all to plaintiff's damages as hereinafter stated.

69.     NEAL has been damaged by Defendants' wrongful conduct and seeks the relief that is afforded by Ohio Revised Code § 4112 for violation of his rights as a person, including statutory damages according to proof.

70.     As a result of Defendants' acts and omissions in this regard, NEAL has been required to incur legal expenses and hire attorneys in order to enforce his rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities. Pursuant to the provisions of Ohio Revised Code § 4112, NEAL therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

## III.    THIRD CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO ADMINISTRATIVE CODE § 4101:1-11, *et seq.*

71.     NEAL repleads and incorporates by reference as if fully set forth again herein, the

allegations contained in paragraphs 1 through 70 of this complaint.

72. Ohio Administrative Code (hereinafter "O.A.C.") § 4101:1-11 controls the design and construction of facilities for accessibility for individuals with disabilities.

73. Sites, buildings, structures, facilities, elements and spaces, temporary or permanent, shall be accessible to individuals with disabilities. O.A.C. § 1103.1.

74. ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS, being a site, building, structure, facility, element or space, committed an unlawful act pursuant to O.A.C. §§ 1104.1 and 1109.1 by failing to make accessible its spaces, including but not limited to, its restrooms.

75. ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS committed an unlawful act pursuant to O.A.C. § 1108.1 by failing to provide accessible seating in its dining areas.

76. Defendants' violations denied NEAL full enjoyment of its accommodations, advantages, facilities, or privileges, whereas, NEAL had difficulty entering the property due to extensive barriers for patrons confined to wheelchairs on the accessible route.

77. As a result of these violations, NEAL is entitled to compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendants to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

78. A separate act in violation of Ohio Administrative Code § 4101:1-11, *et seq.* has been committed each day that Defendants act or fail to act and/or knowingly and willfully fail and refuse to make accessible its site for physically disabled persons presently existing at the

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 40

subject facilities. NEAL has been denied full and equal access on an ongoing basis since the date of his first visit. As a legal result, NEAL is entitled to seek appropriate relief, such as damages.

79.     As a result of Defendants' accessibility violations, NEAL suffered violations of his civil rights, as well as suffering from personal injury, shame, humiliation, embarrassment, frustration, anger, chagrin, disappointment and worry, all of which are expectedly and naturally associated with a denial of access to a person with physical disabilities, all to plaintiff's damages as hereinafter stated.

80.     NEAL has been damaged by Defendants' wrongful conduct and seeks relief for violation of the O.A.C., including actual and special damages according to proof.

81.     As a result of Defendants' acts and omissions in this regard, NEAL has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities. NEAL therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.

Wherefore, Plaintiff SPENCER NEAL prays for relief and damages as hereinafter stated.

**O.R.C. 4112.16 NOTICE OF VIOLATION OF ACCESSIBILITY LAW**

82.     Pursuant to O.R.C. 4112.16 Notice of Violation of Accessibility Law, prior to filing a civil action alleging violation of State of Ohio accessibility law, the alleged aggrieved party may notify the owner, agent, or other responsible party, by personal service or by certified mail, of alleged accessibility law violations.

83.     On September 8, 2020, Plaintiff served upon Defendant SCIOTO DOWNS, INC.'s statutory agent a Notice of Violation of Accessibility Law pursuant to O.R.C.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 41

4112.16.

84. On September 9, 2020, Plaintiff served upon Defendant COLUMBUS SOUTHEAST HOTEL GROUP LLC's statutory agent a Notice of Violation of Accessibility Law pursuant to O.R.C. 4112.16.

85. Defendant SCIOTO DOWNS, INC.'s statutory response deadline in which to serve Plaintiff with its response was September 29, 2020.

86. Defendant COLUMBUS SOUTHEAST HOTEL GROUP LLC's statutory response deadline in which to serve Plaintiff with its response was September 30, 2020.

87. Both Defendants failed to serve a response upon Plaintiff or his counsel within 15 business days of receiving the O.R.C. 4112.16 Notice.

88. Due to Defendants' failure to respond in accordance with the statute, Plaintiff may commence his lawsuit for violations of State of Ohio accessibility laws.

89. Due to Defendant's failure to respond in accordance with the statute, Plaintiff, if deemed the prevailing party, shall recover reasonable attorney's fees, in addition to any other remedies available to the plaintiff.

Wherefore, Plaintiff SPENCER NEAL prays for relief and damages as hereinafter stated.

**PRAYER:**

Wherefore, NEAL prays that this court grant relief and damages as follows:

**I.  PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1.  For injunctive relief, compelling Defendants to make ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS readily

accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered.

2. For attorneys' fees, litigation expenses and costs of suit, if NEAL is deemed the prevailing party; and

3. For such other and further relief as the court may deem proper.

**II. PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO REVISED CODE § 4112.02, *et seq*.**

4. For injunctive relief, compelling Defendant to make ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS readily accessible to and usable by individuals with disabilities, per state law.

5. General and compensatory damages according to proof;

6. All damages for each day, from the inception of the filing of this complaint, on which Defendants have failed to remove barriers which denied NEAL and other persons with disabilities full and equal access.

7. Attorneys' fees pursuant to Ohio Revised Code § 4112.99, if NEAL is deemed the prevailing party;

8. Punitive damages, pursuant to Ohio Revised Code § 2315.21;

9. For all costs of suit;

10. Prejudgment interest pursuant to Ohio Revised Code 1343.03(A);

11. Such other and further relief as the court may deem just and proper.

**III. PRAYER FOR THIRD CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO ADMINISTRATIVE CODE § 4101:1-11, *et seq*.**

12. For injunctive relief, compelling Defendants to make ELDORADO GAMINGG SCIOTO DOWNS and HAMPTON INN & SUITES COLUMBUS SCIOTO DOWNS readily accessible to and usable by individuals with disabilities, per state law.

13. General and compensatory damages according to proof;

14. All damages for each day, from the inception of the filing of this complaint, on which Defendant have failed to remove barriers which denied NEAL and other persons with disabilities full and equal access.

15. Attorneys' fees pursuant to Ohio Revised Code § 4112.99, if NEAL is deemed the prevailing party;

16. Punitive damages, pursuant to Ohio Revised Code § 2315.21;

17. For all costs of suit;

18. Prejudgment interest pursuant to Ohio Revised Code 1343.03(A);

19. Such other and further relief as the court may deem just and proper.

Respectfully submitted,

BLAKEMORE, MEEKER & BOWLER CO., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lakes Dr.
Akron, Ohio 44319
Telephone: (330) 253-3337
Facsimile: (330) 253-4131
cgm@bmblaw.com

Attorney for Plaintiff SPENCER NEAL

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 44